```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT X. MOORE,                  )
                Plaintiff,        )
                                  )
       v.                         )   Civil Action No. 02-322
                                  )   Judge McVerry
PHILIP JOHNSON, Warden, et.al,    )   Magistrate Judge Hay
                Defendants.       )
```

<u>REPORT AND RECOMMENDATION</u>

I.  <u>RECOMMENDATION</u>

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 42) be granted.

II. <u>REPORT</u>

Plaintiff, Robert X. Moore, an inmate previously confined at the State Correctional Institution at Pittsburgh (SCIP), commenced this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, against the following individuals previously employed at SCIP: Philip Johnson, Superintendent; Vince Mantella, Manager of Correctional Industry; John Daniely, Corrections Products Factory Supervisor; and Sam Stewart, Factory Foreman I-Tag Plant. Plaintiff alleges that Defendants violated his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution by failing to protect him from attack by another inmate.

Plaintiff alleges that on August 9, 2001, he was working in the Tag Plant at SCIP when he was violently assaulted by another

1

inmate, William Birdsong, with a large metal shaft pipe. Plaintiff and inmate Birdsong were working in the same area of the Tag Plant when the assault occurred. As a direct result of the attack, Plaintiff suffered serious injuries that required extensive medical care.

Inmate Birdsong is serving a life sentence for a double murder conviction. In the area where Plaintiff and Birdsong were working, there were many objects that easily could be used as weapons of attack. Because of Birdsong's alleged violent nature, Plaintiff asserts that Defendants should not have allowed him access to such area. Moreover, Plaintiff asserts that Defendants were aware of this dangerous situation but failed to take measures to correct it.

Presently before the Court is the Defendants' Motion for Summary Judgment. For the reasons that follow, Defendants' motion should be granted because they did not show deliberate indifference to a significant risk of harm to Plaintiff.

*Standard of Review*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See Marzano v. Computer Science Corp., 91 F.3d 497, 501 (3d Cir. 1996). In deciding a motion for summary judgment the Court must view all inferences in a light most favorable to the non-moving party. Id., citing Armbruster v. Unisys Corp., 32 F.3d 768, 777

(3d Cir. 1994). The moving party "has the burden of showing there is no genuine issue of material fact, and once the moving party has sustained its burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial." Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989)(citing Celotex Corp., supra at 322-24). The non-moving party, however, may not rely on bare assertions, conclusory allegations or mere suspicions to support its claim but must demonstrate by record evidence the meritorious nature of the claim. Orsatti v. New Jersey, 71 F.3d 480, 484 (3d Cir. 1995).

*Discussion*

Plaintiff's Complaint seeks recovery under 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: (1) the alleged misconduct must have been committed by a person acting under color of state law; and (2) the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff's Complaint asserts liability against Defendants under the Eighth and Fourteenth Amendments. The Eighth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals against the infliction of "cruel

3

and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, the Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors. Id., 511 U.S. at 833.

Every Eighth Amendment claim embodies both an objective and a subjective component. In the context of a "failure to protect" claim, a plaintiff must demonstrate that: (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials showed "deliberate indifference" to such risk. Id., 511 U.S. at 834. The first criterion requires a plaintiff to demonstrate that he suffered a deprivation that is "objectively sufficiently serious." Id. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that

today's society chooses to tolerate.  Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, "deliberate indifference," requires that a plaintiff show that the defendant prison official had a sufficiently culpable state of mind.  Farmer, 511 U.S. 828.  The Supreme Court explained the deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Thus, in Farmer, the Supreme Court rejected an objective test for deliberate indifference.  Instead, the Court adopted a subjective test that requires an inquiry into what the prison official actually knew rather than what a reasonable official in his position should have known.  Notwithstanding, a defendant's

5

knowledge of a risk can be proved indirectly by circumstantial evidence. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-843 (internal quotations and citations omitted). Similarly, a prison official defendant cannot escape liability by showing that he did not know that a particular inmate was in danger of attack: "it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Id. at 843. "[T]o defeat the summary judgment, [a plaintiff] must present enough evidence to support the inference that the defendants [are] 'knowingly and unreasonably disregard[ing] an objectively intolerable risk of harm.' " Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001) (quoting Farmer, 511 U.S. at 846).

The record evidence shows that Plaintiff is not entitled to recover on his claim of failure to protect for several reasons. First, there is no evidence that Birdsong posed a specific threat

6

to Plaintiff because of a shared history of violence or that Birdsong ever had made a specific threat to him.  More importantly, there is insufficient evidence to put any of the Defendants on notice of any risk Birdsong posed to other inmates in general or to Plaintiff specifically.  In this regard, attached to Defendants' Motion are Birdsong's disciplinary records dating from 1979.  From April 20, 1979 through the date of the incident, Birdsong received thirty-nine misconducts.  The majority of the misconducts were issued for refusing to obeys orders to:  turn down his radio/TV; remove obstructions from his cell door; stop when ordered by the guards; double cell with another inmate; stop washing his clothes in the shower; leave the shower area after the maximum ten minutes had expired; clean up trash/food he had thrown on the floor; and to go to his prison job.  In addition, he received several misconducts for:  using obscenity at the guards; being in unauthorized areas; failing to have his ID; using another person's urine to take a urinalysis test; threatening the guards when they did not turn off the lights during count; and for lying in regards to contraband regarding a watch and a sweatshirt.  None of these misconducts involved physical violence toward the guards or other inmates.

    In December of 1989, Birdsong received a misconduct for his involvement in a conspiracy plot to escape using bar spreaders and possible kidnapping/murder of guards who interfered.  Prison officials learned of the plan through confidential inmate sources

and Birdsong received a total of 540 days of disciplinary custody.  After that, Birdsong received three separate misconducts for having homemade shanks in his possession (3/4/91; 8/13/91; and 12/28/94).  Again, none of these misconducts asserted that Birdsong was intending to use, or had used, the shanks on any inmate.  In fact the only misconduct Birdsong received alleging violence against another inmate came on January 8, 1995 when he threatened to kick another inmate.

   Plaintiff correctly asserts that the <u>Farmer</u> standard does not require that Defendants be aware of a specific risk to an individual inmate before prison officials can be held to have acted with deliberate indifference.  As stated above, a prison official can be found liable if he knows of and disregards an excessive risk to inmate health or safety; specific knowledge is not a requirement.  Here, however, there is insufficient evidence to show that any Defendants knew of, or had reason to know of, an excessive risk to inmate safety posed by Birdsong.  While he received a substantial number of misconducts, the overwhelming majority were given for his insubordination in refusing to obey orders.  Moreover, the fact that he was involved in a conspiracy to escape, which included the possibility of killing corrections officials, does not show any propensity to inflict violence on his fellow inmates.  Neither does his possession of homemade shanks, which he could have possessed for purposes other than to stab his fellow inmates.  There simply is no evidence, aside from

his single threat against inmate Philips, that he ever intended any harm to the other inmates at SCIP.  Rather, his threats were directed against the guards; not the inmates.  There simply is insufficient circumstantial evidence to support the inference that Defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm.

Moreover, Defendants Dantiely, Mantella, and Stewart each submitted affidavits wherein they alleged that they were not aware of any history of inmate assaults occurring at the Tag Plant at SCIP.  Nor were they aware of any previous threats or altercations between inmates Birdsong and Moore.  One incident alone cannot suffice for proof of the sort of "pervasive," "longstanding" and "well-documented" risk of harm that is required for violation of the Eighth Amendment.  Cf. Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) ("A pervasive risk may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than a reign of violence and terror.") (internal quotation omitted).

As Defendants point out, the situation at bar is similar to the facts presented in Baker v. Lehman, 932 F.Supp. 666 (E. D. Pa. 1996).  In that case, Baker, an inmate in the State Correctional Institution at Graterford was attacked by another Graterford inmate in the prison clothing shop where they both worked.  The attacker, inmate Jones, used a pair of ten-inch scissors to stab Baker multiple times in the chest.  Baker, 932

F. Supp. at 669. In reviewing the claim that Defendants created an unreasonable risk of harm by allowing Jones, a convicted murderer, to work in the clothing shop, the Court noted that inmates seeking employment in the clothing shop were not screened on the basis of the crimes for which they were incarcerated but their conduct in prison was taken into account.  Id.  Inmate Jones was in prison for murder.  He was provided with a pair of scissors as were almost all the other clothing shop workers.  Id. There were approximately one hundred fifty inmates working in the clothing shop, and there was only one officer, a fire and safety inspector, maintaining security.  Id.  After reviewing these facts, the Court held as follows.

> With respect to the security measures in the clothing shop, *i.e.*, the lack of screening on the basis of prior crimes, the presence of only one guard for 150 inmates, and the availability of the scissors, this evidence is not sufficient to create awareness of a substantial risk of serious harm, given the previous absence of violence in the clothing shop.  There was evidence of only one other such incident, thirty years earlier. The plaintiff's evidence does not show that, with respect to the clothing shop, "a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' " such that the defendants "must have known" about it.  Farmer, 511 U.S. at ___, 114 S.Ct. at 1981.

Id. at 672.

   Similarly, the facts at bar are not sufficient to create awareness of a substantial risk of serious harm.  Consequently, Defendants' Motion for Summary Judgment should be granted.

Accord <u>Counterman v. Warren County Correctional Facility</u>, 2006 WL 929366 (3d Cir. March 29, 2006) (affirming grant of summary judgment for prison officials in failure to protect case).

III.   <u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                Respectfully submitted,

                                <u>/s/ Amy Reynolds Hay</u>
                                AMY REYNOLDS HAY
                                United States Magistrate Judge

Dated: 24 May, 2006

cc:   Hon. Terrence F. McVerry
      United States District Judge

      Daniel J. Iler, Esquire
      591 E. Maiden Street
      Washington, PA 15301

      Kemal Alexander Mericli, Esquire
      Office of the Attorney General
      Civil Litigation Section
      564 Forbes Avenue
      6th Floor, Manor Complex
      Pittsburgh, PA 15219